HAWTHORNE, Justice
(dissenting).
The district judge concluded in his reasons for judgment that the controversial reservation was in legal effect a reservation of a royalty interest on the part of the Federal Land Bank, and I fully agree with this conclusion. The judge stated:
“The second proposition [Was the reservation from the Federal Land Bank of New Orleans, in the deed to S. W. McRae on February 28,- 1938, a reservation of a mineral servitude, or was it a reservation of a royalty interest only?] * * * presents the most serious question for determination by the Court. * * * The contract, of course, starts off with the words that would mean a reservation of a mineral servitude. The second sentence however of the contract starts off with the words ‘provided however’. What is the effect and meaning of this proviso in the contract?
***** *
“The definitions contained in Words and Phrases and in Corpus Juris Secundum are too numerous to quote in this opinion, but a reading of these definitions shows that the words ‘provided however’ modify, limit, restrict and explain the antecedent clause or sentence. This is true whether it be in a statute or covenant. In Vol. 34, Words and Phrases, Pocket Part, appears the following quotation:
“ ‘Provided However
*728 “ ‘The phrase “provided however”, introducing a paragraph in a trust declaration, indicates that paragraph qualifies or modifies entire article in which paragraph is contained, the word “provided” expressing a limitation or exception, and the word “however” adding confirmation to such intention. Millard v. McFadden, 185 Misc. 771, 57 N.Y.S.2d 594, 596.
"I think * * * the confusion which evidently existed at the time of the confection of the contract with reference to what constituted a royalty interest and what constituted a mineral servitude has led to the peculiar wording of the contract as it pressently exists. This contract was written prior to the several decisions which we have had since that have more clearly defined what a royalty interest might consist of. I am convinced that it was the intention of the parties in naming this as a ‘mineral right’ and there being a proviso in the contract to more fully explain it, that' the antecedent sentence defining it as ^a mineral right is qualified, limited, restricted and explained by the subsequent provisions following the proviso. If this were not so, there would have been no useful purpose served in more fully explaining the dispositions to be made of the bonuses, rentals and royalty payments.
■' “Counsel for Plaintiff argues that the Federal Land Bank of New Orleans would have had the right to have granted a mineral lease upon this property as the privilege granted to the vendee was not exclusive. I think this position is begging the words of the contract and the intention of the parties to the instrument.
“The word privilege is defined as a right and the Federal Land Bank of New Orleans, having granted this right to the vendee, could not consistently or conscientiously exercise this right in view of the fact that it had sold it to defendant in the conveyance, and no doubt this right formed a part or portion of the consideration paid by the defendant. There is nothing in the contract which would have made disposition of where the bonuses or- rentals would have gone, and, if it was intended that the Federal Land Bank of New Orleans should reserve unto itself any such right, there would certainly have been a like clause for the disposition of the rentals and bonuses and royalty payments to be made.
“In the case of Vincent v. Bullock, 192 "La. 1, 187 So. 35, and which is a very learned discussion of the mineral rights and has clarified the law as to mineral rights and royalty reservations, the Court says: ‘it is immaterial what term is used in characterizing the interest reserved by the plaintiffs, because they have, by clear and unmistakable language, described the interest reserved by them * * *7
“Taking the contract as a whole and conceding that the words ‘provided' however’ qualify, limit, restrict and explain the antecedent sentence, we come to the construe *730 tion of the contract as a whole, and which ,is largely that based upon the second sentence. Taking it from there, the rights of the parties are specifically set forth and spelled out as to what they are to receive. The Bank had no right to develop the property or rights of ingress and egress for the purpose of developing it, and it had no right to lease it. It had no rights to the bonuses or rentals as one-half of the bonuses and rentals was to go to McRae and the other one-'half was to be taken by the Bank as assignment and applied to McRae’s debt and inure to his benefit. It had no right to participate in the payments from any production other than % of the %.
“Taking the contract as a whole with its qualifications and limitations and the explanation contained in the second part, what would have been the effect of the contract if contemporaneously or the next day the plaintiff had leased or sold a portion of the property and paid off the debt? What would have been the right of the Bank other than to participate ‘in the income accruing under a mineral lease of the usual % of the % of the minerals?’ What would have been the effect if the next day the purchaser had decided to pay off the indebtedness on the whole of the property? What right would the Bank then have had other than % of the usual % royalty under a mineral lease to be subsequently made?
“Regardless of what name might have been used in the first sentence of the contract, I am of the opinion that the second sentence qualifies, limits and restricts it to a royalty interest only and I cannot see how such a right could be a mineral servitude without partaking of all of the elements of a servitude. I have arrived at this conclusion after a very thorough study of the numerous cases that were cited to me by the plaintiff and the defendants * * (Italics mine.)
Moreover, if the provision is considered to be ambiguous so that extrinsic evidence would be admissible to determine the intent of the parties, I am'of the opinion that the extrinsic evidence adduced on the trial of this case clearly shows that the interest which the Federal Land Bank intended to reserve was nothing more than a royalty interest. The deed to S. W. McRae which contains the controversial clause is dated February 28, 1938. Less than two months prior thereto, on January 11, 1938, the Federal Land Bank executed a deed to C. F. Kinard in which there is a reservation in terms almost identical with the terms of the reservation made in the sale to McRae. On May 19, 1947, the Federal Land Bank sold the rights reserved in its deed to Kinard to Hassie Hunt Trust. In this act of sale we find the following provision :
“The mineral interest conveyed hereunder is the same mineral interest reserved by The Federal Land Bank of New Orleans in that certain Act of Sale from The. Federal Land Bank of New Orleans to C. *732 . F. Kinard dated the 11th day of January, 1938.
“The interest herein sold is a Jie royalty interest, being % of % of all oil, gas, and other minerals (except sand and gravel)' produced from said land, and such interest is non-participating as to any mineral lease bonuses and rentals.” (Italics mine.)
From the above it will be seen that the bank, when it conveyed the same interest reserved by it in its deed to Kinard, construed such reservation to be only a royalty interest and nothing more, and its own -interpretation of the reservation was that ■it had reserved what in legal contemplation was a royalty interest.
I therefore dissent